ANDRÉ BIROTTE JR.
United States Attorney
DENNISE D. WILLETT
Assistant United States Attorney
Chief, Santa Ana Branch Office
BRETT A. SAGEL (CBN: 243918)
Assistant United States Attorney
     Ronald Reagan Federal Building
     411 West Fourth Street, Suite 8000
     Santa Ana, California 92701
     Telephone: (714) 338-3598
     Facsimile: (714) 338-3708
     Email:  Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. SA CR 13-143-JLS |
| Plaintiff, | GOVERNMENT'S RESPONSE TO PRE SENTENCE REPORT AND GOVERNMENT'S POSITION RE: SENTENCING FOR DEFENDANT WILLIAM EARL FLAVORS |
| v. | |
| WILLIAM EARL FLAVORS, | |
| Defendant. | Hearing Date:  May 9, 2014<br>Hearing Time: 9:30 a.m. |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Brett A. Sagel, hereby files its response to the Pre-Sentence Report and its position regarding sentencing for defendant WILLIAM EARL FLAVORS.

    ///

The Government's sentencing position and response is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: April 21, 2014                    Respectfully submitted,

                                         ANDRÉ BIROTTE JR.
                                         United States Attorney

                                         DENNISE D. WILLETT
                                         Assistant United States Attorney
                                         Chief, Santa Ana Branch Office


                                                /s/
                                         ─────────────────────────────
                                         BRETT A. SAGEL
                                         Assistant United States Attorney

                                         Attorneys for Plaintiff
                                         UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                              PAGE

**Contents**

TABLE OF AUTHORITIES................................................ii

I.    MEMORANDUM OF POINTS AND AUTHORITIES INTRODUCTION..............1

II.   FACTUAL BACKGROUND.............................................2

      A.    Defendant's Plea Agreement...............................2

      B.    The Pre-Sentence Reports.................................3

III.  SENTENCING RECOMMENDATION......................................5

      A.    The Government's Guideline Calculation...................5

      B.    The Government's Recommended Sentence....................5

            1.    Nature and Circumstances of the Offense............7

            2.    History and Characteristics of Defendant...........7

            3.    Need for the Sentence to Reflect the Seriousness
                  of the Offense, to Promote Respect for the Law,
                  And to Provide Just Punishment for the Offense......10

            4.    Need for the Sentence to Afford Adequate
                  Deterrence.........................................10

            5.    Need for the Sentence to Protect the Public.........10

IV.   CONCLUSION....................................................11

**TABLE OF AUTHORITIES**

DESCRIPTION                                                              PAGE

**FEDERAL CASES**

United States v. Booker,
    543 U.S. 220, 264 (2005).........................................5

United States v. Cantrell,
    433 F.3d 1269, 1279 (9th Cir. 2006)............................6

United States v. Flavors, SA CR 99-90..............................1

**FEDERAL STATUTES**

18 U.S.C. § 2421...............................................1, 3

18 U.S.C. § 3553............................................passim

**FEDERAL RULES**

Federal Rule of Criminal Procedure 11(c)(1)(C).....................1

**SENTENCING GUIDELINES**

U.S.S.G. § 2G1.1(a)(2).........................................5

U.S.S.G. § 2G1.1(b)(1).........................................5

U.S.S.G. § 2G1.1(d)(1).........................................5

U.S.S.G. § 3E1.1(b)............................................5

**I.    MEMORANDUM OF POINTS AND AUTHORITIES INTRODUCTION**

On December 5, 2013, defendant WILLIAM EARL FLAVORS ("defendant") pled guilty to count three of the indictment, charging him with knowingly and willfully transporting C.G. in interstate commerce from California to Nevada with the intent that C.G. would engage in prostitution, in violation of 18 U.S.C. § 2421.  The parties have entered into a binding plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) to resolve this matter.  Pursuant to the plea agreement, defendant pleaded guilty to count three of the indictment, and the parties have agreed that a sentence of 10 years imprisonment, to run consecutive the 48 month sentence previously imposed in United States v. Flavors, SA CR 99-90, Docket No. 253, followed by eight years of supervised release is appropriate in this case, taking into account the advisory guideline range and the factors listed in 18 U.S.C. § 3553(a).

On March 31, 2014, the Probation Office prepared and disclosed its thorough Pre-Sentence Report ("PSR") and Sentencing Recommendations for defendant.  The Probation Office determined that defendant's total offense level is 17 and the criminal history category is IV, resulting in a sentencing range of 37-46 months imprisonment.  (PSR ¶ 99).  The Probation Office, however, agreed with the stipulated sentence in the plea agreement based on a review of the various Section 3553 factors.

The Government has no objections to the factual statements in the PSR, the calculation of the total offense level, or the calculation of criminal history category.  Pursuant to the plea agreement reached by the parties, the Government believes that the advisory guideline calculation of the Probation Office is correct,

but taking into account the factors listed in 18 U.S.C. § 3553(a)(1)-(7), the appropriate disposition of this case is the sentence agreed to by the parties and recommended by the Probation Office: 120 months imprisonment to run consecutive to the previously imposed 48 month sentence, pay a special assessment of $100, and be placed on supervised release for a period of eight years.

## II. FACTUAL BACKGROUND

### A. Defendant's Plea Agreement

Defendant admitted to the following facts pursuant to the factual basis of his plea agreement:

Beginning in or around March 2012 and continuing until in or about October 2012, defendant WILLIAM EARL FLAVORS recruited, enticed, harbored, transported, and maintained, C.G., knowing that means of force, threats of force, fraud, and coercion would be used to cause C.G. to engage in prostitution.

In or around March 2012, defendant met C.G. and offered her a job providing massages to clients. Defendant took provocative photographs of C.G. and posted them on www.backpage.com. Thereafter, defendant informed C.G. that she would have to engage in prostitution. From March 2012 through October 2012, defendant was C.G.'s pimp and required C.G. to walk the streets in search of "clients" and defendant posted online advertisements of C.G. Defendant required C.G. to provide him with all of the money earned through prostitution. In order to coerce and force C.G. into continuing to engage in prostitution, defendant physically abused her, threatened her with additional physical abuse, and did not allow her to leave him.

2

1    On or about September 1, 2012, defendant took C.G. and K.W. from
2 Orange County, California to Las Vegas, Nevada with the intent that
3 C.G. and K.W. engage in prostitution. On or about September 8, 2012,
4 defendant took C.G. from Orange County, California to Las Vegas,
5 Nevada with the intent that C.G. engage in prostitution. During
6 these trips to Las Vegas, Nevada, defendant posted online
7 advertisements on www.backpage.com for C.G. and K.W. to engage in
8 prostitution. (Def. Plea Agreement ¶ 10).

   **B.   The Pre-Sentence Reports**

   In December 1999, defendant pled guilty to transportation of a
fifteen-year-old girl in interstate commerce for prostitution and
transportation of a seventeen-year-old girl in interstate commerce
for prostitution, both in violation of 18 U.S.C. § 2421. (PSR ¶¶ 10,
58). In addition to transporting these minors from Washington to
California, defendant beat, raped, and forced these girls into
prostitution on his behalf. (PSR ¶ 58; 1999 PSR ¶ 14-69)[1].
Defendant's depravity towards his victims included, among other acts:
breaking one victim's nose from beating her; and beating another
victim with clothes hangers, burning her with curling irons, and
forcing her to drink cups of urine and cigarette butts. (1999 PSR ¶¶
21, 39, 42, 67). And although defendant's 1999 convictions related
to two minor victims, defendant's conduct in that case also included
defendant victimizing three other women through physical violence,
threats, and/or rape. (1999 PSR ¶¶ 115-118). The Honorable

---

[1] The Probation Office properly summarizes defendant's prior convictions in the current PSR disclosed to the parties on March 31, 2014; however, the entirety of defendant's abhorrent conduct underlying the 1999 convictions is more fully detailed in his 1999 PSR prepared on or about February 11, 2000 (which the Government will cite as the 1999 PSR).

Alicemarie H. Stotler sentenced defendant to 168 months in prison on his 1999 convictions; defendant was released in or about December 2011. (PSR ¶ 10).

Within approximately three months of release on the 1999 convictions, defendant's supervisory probation officer discovered several online postings for sexual services that included photographs of a scantily clad female in defendant's bedroom and had a cellphone number associated with the postings from which defendant had previously called the probation officer. (PSR ¶ 12). The woman in the photographs that defendant posted online was C.G. (PSR ¶¶ 11, 21).

Defendant first physically assaulted C.G. within the first month of meeting her because defendant believed C.G. talked to another pimp. (PSR ¶ 22). Defendant established certain rules for C.G., which included: C.G. could not talk to other black men; C.G. must give defendant all the money C.G. made through prostitution; if C.G. were ever arrested by the police, she was to say she worked for herself and not for a pimp; and C.G. was never to leave or go anywhere unless defendant was with her. (PSR ¶¶ 22, 23, 25, 26). Defendant eventually became more regularly abusive towards C.G., which included beating her with his fists and on one occasion burning her legs with a lit cigarette. (PSR ¶ 26).

On or about October 22, 2012, defendant took C.G. and F.B., another woman defendant served as her pimp, to Beach Boulevard in Buena Park to prostitute them out. (PSR ¶¶ 28, 59). Later that night, after C.G. misplaced approximately $70 from a client, defendant became extremely upset and forced both C.G. and F.B. to strip and defendant searched all of their body cavities for the

missing money. (Id.) When defendant did not find the money, he threw C.G. against a wall and beat her for losing the money. (Id.)

On October 23, 2012, while defendant was before the Honorable Cormac J. Carney on a probation violation hearing, F.B. escaped from defendant's apartment knowing he was at court and F.B. contacted the police to report that defendant raped her the night before. (PSR ¶ 17). Long Beach Police Department arrested defendant the next day on rape charges and defendant ultimately pled guilty to pimping both F.B. and C.G. and received a four year sentence. (PSR ¶¶ 18, 59).

**III. SENTENCING RECOMMENDATION**

    **A.**    **The Government's Guideline Calculation**

The Government submits that the following guideline calculation applies in the sentencing of defendant:

| | | |
|---|---|---|
| Base Offense Level: | 14 | U.S.S.G. § 2G1.1(a)(2) |
| Specific Offense Characteristics | | |
| Offense Involved Fraud and Coercion: | +4 | U.S.S.G. § 2G1.1(b)(1) |
| Multiple Victims: | +2 | U.S.S.G. § 2G1.1(d)(1) |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1(b) |
| Total Offense Level: | 17 | |

With a criminal history category of IV, a total offense level of seventeen yields an advisory sentencing range of 37-46 months imprisonment.

    **B.**    **The Government's Recommended Sentence**

The law provides that sentencing courts must start with the sentence advised by the Sentencing Guidelines. United States v. Booker, 543 U.S. 220, 264 (2005) ("The district courts, while not

1 bound to apply the Guidelines, must consult those Guidelines and take
2 them into account when sentencing."); <u>United States v. Cantrell</u>, 433
3 F.3d 1269, 1279 (9th Cir. 2006) (stressing that "district courts
4 still must consult the Guidelines and take them into account when
5 sentencing, even though they now have the discretion to impose non-
6 Guidelines sentences").  Although the "starting point" here in
7 determining the appropriate sentence is the advisory guideline range
8 of 37-46 months of incarceration, the Government believes -- and the
9 probation officer concurs -- that an appropriate sentence under 18
10 U.S.C. § 3553 is the ten-year, statutory maximum term of imprisonment
11 under count three.
12      Pursuant to 18 U.S.C. § 3553(a), the court should "impose a
13 sentence sufficient, but not greater than necessary," to comply with
14 the enumerated purposes of sentencing, including:

> (1) the nature and circumstances of the offense and the
> history and characteristics of the defendant; (2) the need
> for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to
>     promote respect for the law, and to provide just
>     punishment for the offense; (B) to afford adequate
>     deterrence to criminal conduct; (C) to protect the
>     public from further crimes of the defendant; and (D)
>     to provide the defendant with needed educational or
>     vocational training, medical care, or other
>     correctional treatment in the most effective manner[.]

21 18 U.S.C. § 3553(a)(1), (2).
22      As the probation officer notes:

> the [sentencing] guidelines may understate the seriousness
> of [defendant's] criminal history as well as the risk of
> recidivism.  Specifically, [defendant's] criminal history
> includes prior convictions for similar conduct that
> involved extreme levels of violence.  Further, a prior 14-
> year federal prison sentence failed to deter [defendant]
> from reoffending and he remains a serious threat to the
> safety to the community.

27 Sentencing Recommendation Letter at 7.  The Government agrees that
28 the sentencing guidelines do not adequately reflect the enumerated

6

purposes of Section 3553 in this case, and therefore, submits that the stipulated sentence by the parties is more consistent with goals of sentencing set forth in the statute.

### 1. Nature and Circumstances of the Offense

Placing women into prostitution, in addition to physically assaulting and threatening them, to ensure that the women stayed with defendant and worked for defendant, cannot be described as anything other than deplorable.  The fact that defendant committed these acts while under federal court supervision for previously beating and forcing minors into prostitution makes the nature and circumstances of defendant's acts even more appalling.  Within months of being released from a fourteen-year sentence, defendant again chose to financially support himself through the sexual exploitation of at least three victims.

Defendant specifically recruited C.G. to engage in prostitution for his financial gain.  Defendant coached C.G. on what to do with a "john," collected all proceeds of C.G.'s prostitution, and on at least two occasions drove C.G. to Nevada to engage in prostitution.  Besides the apparent sexual exploitation of the victims in this case, defendant also struck and burned at least one victim (C.G.).  Given the nature and circumstances of the offense, a statutory maximum sentence of ten years is warranted.

### 2. History and Characteristics of Defendant

After serving his approximately 14-year federal sentence for transporting minors in interstate commerce for prostitution, and defendant's abhorrent conduct related to those crimes, defendant -- nearly immediately -- again began to beat and place women into prostitution.  When defendant was released from custody in December

7

1 2011, defendant failed to comply with the conditions of supervised
2 release imposed upon him from the beginning.  The Probation Office
3 petitioned the Court on several occasions to violate defendant for,
4 among other reasons: defendant's failure to notify his probation
5 officer that defendant changed his residence; failing to report to
6 drug testing; failing to appear at his psychological counseling and
7 treatment program; defendant's failure to inform his probation
8 officer about being stopped by law enforcement; and defendant's
9 failure to provide timely (and truthful) monthly supervision reports
10 to the Probation Office.
11      At each of defendant's supervised release violation hearings
12 before Judge Carney, the Government sought revocation of defendant's
13 supervision and sought remand into custody.  At each hearing,
14 defendant himself -- often unsolicited -- would make personal
15 promises that if the Court allowed defendant to stay out of custody,
16 defendant would comply with his supervision.  For example, on June
17 25, 2012, defendant personally gave his "word" to the Court that
18 defendant would be "squeaky clean" and would "ace" his conditions.
19 (6/25/12 Transcript at 15, 16).  At the next hearing on September 11,
20 2012, defendant claimed he never "breached the trust of the Court . .
21 . [and] made every effort to comply" with his conditions of
22 supervised release.  Defendant personally stated he wanted to be able
23 to contact the Court directly to let the Court know of his
24 circumstances because, according to defendant, he is "doing
25 everything [he] can do."  (9/11/12 Transcript at 10, 41).  And at the
26 hearing on October 23, 2012, defendant described his interactions
27 with the Probation Office and told the Court: "I don't want to get in
28 trouble.  I'm, like, doing the best I can.  I'm just, I'm just with

whatever you guys want me to do, I'll do it." (10/23/12 Transcript at 23). Relying upon defendant's promises, Judge Carney never sanctioned defendant's initial violations of supervised release, gave defendant additional chances to comply with the law by putting defendant's alleged violations in abeyance, and allowed defendant to remain free on supervised release.

Despite all of the opportunities and trust defendant received from the Court, defendant breached the Court's trust (and lied to the Court), and at all times posed an ongoing, substantial risk to the community.  As defendant told the Court at his September 11, 2012 hearing that defendant was doing everything to earn the Court's trust and to comply with the law, defendant had just returned from bringing C.G. and K.W. on two trips on September 1, 2012 and September 8, 2012 to Las Vegas, Nevada, to cause them to engage in prostitution.  (PSR ¶ 15).  At the October 23, 2012 hearing in which defendant claimed he was doing everything the Court wanted of him because defendant did not want to "get in trouble," defendant had spent the prior day doing plenty not just to violate the Court's trust, but to violate the law. On October 22, 2012, defendant forced C.G. and F.B. to prostitute for him, defendant searched all of C.G.'s and F.B.'s body cavities believing one of them had stolen $70, and defendant threw C.G. against a wall and beat her when the money was not found.  (PSR ¶¶ 28, 59).

Judge Stotler previously sentenced defendant to 168 months for the horrific crimes in his 1999 case, and defendant also has a 1995 felony harassment and assault conviction for physically assaulting the mother of one his children and threatening to kill her. (PSR ¶ 55).  And the underlying facts that form defendant's plea agreement,

which are sadly similar to his prior convictions, establish once again that defendant is a violent and abusive individual that victimizes vulnerable women.  As a result, defendant's history and characteristics further warrant the stipulated sentence.

        3.    <u>Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, And to Provide Just Punishment for the Offense</u>

Sentencing defendant to the statutory maximum term of imprisonment on the count of conviction for defendant's underlying conduct in this case, would reflect the seriousness of defendant's crime, promote respect for the law, and provide just punishment.

        4.    <u>Need for the Sentence to Afford Adequate Deterrence</u>

The need for the sentence imposed to afford adequate deterrence can be general or specific deterrence, but the need for specific deterrence in this case is incredibly strong.  Defendant spent over a decade in jail for his 1999 convictions, but when released from the Bureau of Prisons, defendant started committing the current offense, which are strikingly similar to his prior crime.  Clearly defendant's first sentence did not deter him from assaulting women and forcing them into prostitution.

        5.    <u>Need for the Sentence to Protect the Public</u>

The victim-impact statements from the victims of defendant's 1999 convictions provided chilling detail of defendant's depravity, but they also sadly foreshadowed what brings us before this Court now.  One victim, in describing her constant fear of defendant, stated defendant "has no remorse[,] . . . <u>he will go back to doing the same thing</u>, and that [defendant] cares for no one but himself." (1999 PSR ¶ 62 (emphasis added)).  The other victim similarly recounted that "she is afraid of [defendant] and in fear for her

life." (1999 PSR ¶ 66). She continued: "She has emotional and physical scars. She bears scars on her body that she has to look at. Dealing with what [defendant] did to her is a 'never-ending battle' that never goes away. What happened to her never should have happened. <u>She believes that what [defendant] did to her, he will do to someone else.</u> (1999 PSR ¶ 68 (emphasis added)).

The victims of defendant's crimes in 1999 were unfortunately prophetic when they stated that defendant would continue to do to others what he did to them. Defendant has demonstrated that he cannot and will not abide by the law and poses a continual, substantial threat to the safety of the community -- particularly to vulnerable young women. This Court must impose the maximum-allowable sentence under the statute of conviction to protect the public from defendant.

**IV. CONCLUSION**

As a result, the Government submits that the stipulated sentence by the parties of 10 years imprisonment, to run consecutive to his previously imposed 48-month sentence, and eight years of supervised release, is fully appropriate and consistent with the goals of sentencing set forth in 18 U.S.C. § 3553(a), in particular: the need for specific and general deterrence; the need for the sentence to reflect the seriousness of defendant's crimes; the need to promote respect for the law; and the need to provide just punishment. With the two sentences to run consecutively, defendant would ultimately receive a fourteen-year sentence of imprisonment and an eight-year period of supervised release for the underlying conduct in the present case, which is both reasonable and appropriate in this case,

1 and is sufficient, but not greater than necessary, to achieve the
2 goals of 18 U.S.C. § 3553(a).